We're here for our last day of arguments this session. I'm Judge Choflat and I continue to appreciate Judge Huffaker's assistance in our cases this week. We'll hear two cases today. I will caution you to watch the light and make sure you're keeping track of your time, but if you're answering a question, please feel free to finish the answer of the question. At that point, you're on our time, not your own. So with that, we'll get started here in the first case, Howard Avenue Station, LLC versus Frank Kane. Mr. Jacobs. Thank you, your honors. Good morning. My name is Eric Jacobs. I represent Frank Kane, the appellant in this matter. Just briefly, your honors, as an introduction, this started as what I believe is a very simple issue. Does the Florida Statute 83.201 require the repayment of rent once a property becomes tenable again? Today, I will try to touch on why jurisdiction is appropriate in this case, that we have a final order, that Florida Statute 83.201 applies as requested by the debtor to the bankruptcy court, that the motion to dismiss against Mr. Ortiz on this matter should be granted, and time permitting, I will discuss why the equities of the situation is not relevant to the ruling for today, and finally, if needed, a discussion of why the bankruptcy code provisions cited do not apply either. First, your honor, this all began on a motion to abate adequate protection or rent payments that was made in the bankruptcy court by the debtor. That motion was uncontested. The issue that arose during that hearing was whether or not rent payments had to be repaid, not whether they could be abated. Ultimately, the bankruptcy court ruled that the payments would to be abated. This court has jurisdiction to hear this as a final order pursuant to Ritson Group, Inc. v. Jackson Masonry, LLC, 140 Supreme Court 582. This is an opinion from the Supreme Court, and when the Supreme Court ultimately held that an order denying stay relief is a final order subject to appeal. This motion to modify the adequate protection payments arose from an initial motion for stay relief, which was denied as to stay relief, and that adequate protection was granted. That adequate protection was to pay the regular rental payments under the lease. What's the status of the declaratory judgment that was filed on this issue? In the state court matter? It has been pending with almost no movement in the state court since it was filed. Is it still relevant now that the bankruptcy court and the district court have, it seems, decided the issue? I believe it is, because the issues are slightly different. What the district court has ruled, well, depending on how you interpret the district court's ruling, it's either that 83.201 does not require the repayment of rent under this scenario because of the equities of the situation, or it can be read that 83.201 doesn't apply at all, and we're not going under 83.201. Under that latter interpretation, the declaratory relief in state court would be mooted out because we're no longer dealing with that statute, but if the district court only ruled that the payment provisions are no longer controlling, there's still the question of whether or not the lease would be abandoned by failing to agree to the amount of time to complete the repairs. Why doesn't that create a probability that some part of this is not final? If a state court action could still affect, it sounds like, the issues that we're being asked to decide here, how is that a final order? I don't believe the state court order has any impact on what happens here. The state court order is seeking a determination as to whether or not the statute provides a mandatory requirement between abandonment or re-entering the property. The question here is whether or not 83.201 applies at all, or otherwise requires payments. The ruling in the state court, no matter what that ruling is, isn't going to impact what this court rules on, ultimately. If the state court rules that it is terminated, then that affects the lease. It doesn't affect the obligation that this court's trying to determine whether or not rent would be due under the statute here. The state court proceeding is completely separate from this court's ruling. I don't see any actual impact. No matter what this court ruling might impact what happens in the state court, but whatever happens in the state court isn't going to impact the bankruptcy court's order, and isn't going to impact the federal court's rule. As to the finality of the bankruptcy court order itself and the district court's order, there is no further judicial labor required under either of the two orders. The district court order, excuse me, the bankruptcy court order just sets forth the rights of the parties, not that the judge has to do anything else on this discreet issue. Or the district court order merely modifies the bankruptcy court order to take out the provision to pay rent. It doesn't change the fact, excuse me, the fact that the rent has been abated and will continue to abate until a specific date is certain, once it's been determined that the Regency Wood Apartments, 686 Federal 2nd, 899 from the 11th Circuit, doesn't change this impact. In that matter, the district court, excuse me, the district court has sent back an order to the bankruptcy court ruling that the bankruptcy court must make specific additional findings, including calculating the amount of cash collateral that had been be made, and then set a payment. That required additional judicial labor. If this order goes back, as the district court said, there's no additional judicial labor to be implicated. And finally, Your Honor, just very briefly on that issue, this issue does not affect the proof of claim that was filed by Mr. Kane in the bankruptcy case. This all deals with pre-petition acts only. So the two are completely unrelated for each other. As the Florida Statute 83.201, it's important to note that the debtor requested that relief. They asked the bankruptcy court to apply the statute. And in this record, that's Docket Entry 255, pages 361 to 365, specifically page 364, paragraphs 13 and 15. The statute applies when the lease is silent as to procedure, but not. And here, in that same Docket Entry 25, at page 393, the debtor conceded that there were no procedures, and the statute applied. And therefore, 83.201 reserves with the tenant the right to terminate if repairs are not made, and withheld rent under that statute. However, absent this statute, and this is the only statute that's relied upon, that would prevent this debtor, or relieve this debtor from having to pay rent under the contract. Normally, a promise to pay rent is completely independent from the duty of a landlord to make repairs. And to that, we cited Tutte's Pyramid 178 BR 867, a Judge Pasquet case from the Middle District of Florida. Similarly, in a third DCA case, the City of Miami, Beach v. Ellis, 279 Southern 2nd 335, the appellate court specifically held that any damages suffered by the plaintiff lessee had to be offset by the failure to pay rent during the case. So what that court ultimately ruled was the failure to pay that rent was improper, and the landlord had the right to collect that rent, even while the property was in disrepair. The Bankruptcy Code doesn't change this, Your Honor. Section 365 D3 says, notwithstanding Section 503, the provision that provides for administrative expenses, all obligations of the lease must be paid. Counsel, walk me through the equities aspect or the application of this statute. The tenant has the ability to terminate and abandon, at least up until, I mean, when would the ability to effectuate that right end are terminated? Is it the termination of the lease? Is it the day before the property is declared habitable or tenable? When is that time period run out? So it depends whether you're going under the actual statute, 83.21, or you're going after your traditional breach of contract rights. Under the statute, the debtor is supposed to provide, or excuse me, the tenant is supposed to provide up to 20 days to allow the landlord to repair that property. If the property is not repaired within that 20 days, that then gives two options to the tenant. The tenant must either agree to a new date by which the repairs will be completed, or it can then decide to abandon the property, be relieved of all obligations under the lease, and terminate the lease. Under standard breach of contract law, the debtor would have the rights pursuant to the contract, or pursuant to any contract at law, to then declare that the lease is in breach and terminate the lease at that point in time. But during that procedure, there's no ability for the tenant to fail or refuse to pay rent unless the lease so provides. So under that scenario, the tenant would have to sue the landlord, or wait for the landlord to sue the tenant to determine requesting that back owed rent, or request that rent be paid, and it would be a counter claim or affirmative defense that the damages breached the lease first, and therefore the obligation to pay rent was excused. Maybe this is a better question for opposing counsel, but the tenant has been dispossessed of the property for four years now. They have a right to terminate and abandon. We're here today four years later, why not walk away? Why not terminate and walk away? Is there something else going on that they're trying to preserve, like to purchase, or do they not want somebody else on the property because they own maybe a competitor business across the street? To the extent that they have their own specific interests, I can't speak for them. What I'll say is this is an extremely long fight that has been going on between the parties as early as I believe 2007, and this is the continued culmination of that original battle. The tenant has the right both under 83.201 to abandon or terminate the contract, under state law if they choose to declare a breach, they have a right to terminate and or sue for damages under state law, and then finally, because this is a tenant in bankruptcy, they have a right as a debtor in possession or trustee stand-in to reject the lease, and once the tenant debtor is no longer under any obligations to pay the rent of the property going forward under the lease. So they have that ability to do so, but until that determination is made in bankruptcy court, the code requires that the lease be followed under all terms until and at least it has been rejected. In that last scenario, excuse me, they would need to vacate the property, right? Once rejected, they have an obligation to reject or surrender the property to the landlord. I'm over my time, so if there's no other questions. Thank you. Thank you. We'll hear from Ms. DeGrave now. May it please the court, my name is Heather DeGrave, and I represent the appellee Howard Avenue Station, LLC. Sitting with me is appellee Thomas Ortiz, and we have agreed that I will argue for both of us today. However, to the extent that your honors may have questions about the issue with his standing, he would address those. This appeal should be dismissed for lack of jurisdiction, or in the alternative, this appeal should be dismissed for lack of jurisdiction because neither the underlying bankruptcy court order nor the district court order is a final order. I want to address Judge Grant, your honors question regarding the declaratory judgment state court action. The issues in that case are one, whether the premises are truly untenable, and when that became the case. So those are two issues that are relevant to this issue. Specifically, if you review the district court's order, in the conclusion, specifically states that the landlord will get no back rent from this estate or appellant tenants for any months the premises was untenable or uninhabitable due to landlord Kane's failure under his lease duties. So that factual question of whether it's untenable, when it was untenable, who's at fault, may still be a factual issue that would need to be resolved. So this is not a final order, but rather an order that suggests this is where we're going to head, assuming that you prove the factual issues in your favor. And it should be noted that even to this day, Mr. Kane has failed to make any of the repairs. The premises continue to be uninhabitable. So this notion of whether we have to pay, if it were open today, we would have to pay $1,048,000 if we were able to use the premises today, in back rent, if the order is overturned, is reversed. But the problem is that we don't even know when or if that will ever come to pass, because as we sit here today, the premises are still uninhabitable. So even after entering the further order, even after amending the order, we still don't know when or if that will ever come to pass. I'll repeat Judge Huffaker's question. Why is your client committed to staying there? It is related to the interest, the whole reason why we entered into bankruptcy in the first place, and these premises have been a part of that all along. To date, Howard Avenue Station has invested over $5 million, and it very much has an interest in maintaining its interest in the property ultimately through purchase. So that is why we would like to do that. And also to make full use of the investment that we have to date in this property. The Section 83201 is intended to provide relief to a tenant, not to a landlord. Mr. Cain would like to flip that on its head and say, well, it does provide a procedure, and it also provides one of many remedies. And specifically, at the end of 83201, specifically says that the remedies that are available under 83201 are cumulative, not the sole and exclusive remedy. So it provides a procedure when a lease is silent, as it is in this case, as to the procedure to be followed when repairs need to be made because the premises are wholly untenable. You know, a lot of leases provide that, are silent on that and say that you still need to make payments. And it's one thing if the premises are partially tenable and can be used and can generate income. It's quite another when the roof is caving in and there's no way to make, there's no way to make any income from this property. What do we do then? Leases are silent, 83201 gives a procedure to allow the repair, to compel a landlord to make those repairs. And when they don't make those repairs, there are remedies that are available, but those remedies are cumulative. In this case, we do have that, and we did, admittedly, we did not allow the use of 83201. The debtor did do that and sent an 83201 notice. And Mr. Cain chose to just do nothing and rely on 83201 to effect a constructive eviction. And now is trying to argue that now we're obligated to vacate the premises and to terminate because he didn't bother to do what he was supposed to do under the law. The district court was correct in holding that such inaction was not what the statute intended and that Mr. Cain should not receive a reward for doing so. Such a result would be absurd. Mr. Cain notes that it was the debtor who chose to- I'm inclined to agree that it might be absurd in this instance. Absurd is the wrong word. That has unnecessary legal meaning, but it seems perhaps inequitable to make your client pay back this money after the repairs are made, since they haven't been able to run the business. I'm just not sure that the statute allows for that interpretation, like the words of the statute, rather than maybe some kind of broad intent that we would infer to help lessees. What's your response to that? Well, two things. First of all, it talks about withholding rent, and I think that you can- it doesn't say that all, for every single period- I'm sorry, I keep saying P too loudly- every single period of rent, that all of it has to be returned. It doesn't really actually say that. I think that there is somewhat of an ambiguity in that, in that when you look at what it was intended to do, it was intended that- I mean, it's a 20-day turnaround time, so it was intended that the landlord would come in, make the repairs quickly, and that they would get possession within that same rental period, and then they would have to return the withheld payment. I don't think that it contemplated a situation like this, where four years later, the landlord still has not done anything to make repairs, and yet is just sitting back and saying, well, if I ever decide to do so, then you're going to have to pay me a million dollars. I don't think that's what this intended. I think that there is an ambiguity in that respect. Well, doesn't it also give you an important power as well, is that you can hold up the lease, and the landlord can't put anybody new in it, right? And that can happen in perpetuity. Well, not perpetuity, really, but to the duration of the lease, and that's a power that you hold. I understand what you're saying, Your Honor, but I would disagree, because the power that's there is that we have a lease in place that gives us possessory rights. So, if we were, you know, if we, and it should be noted that with respect to the administrative rent, we had made every single payment until the premises were condemned. So, and assuming that Mr. Repairs, we would have then resumed making the payments. And so, then pursuant to us making the payments, you know, then in exchange, in consideration for that, we get possessory use of the premises. So, here we have a lease that gives us possessory use of the premises, and we, and as soon as it's tenable, we will resume payments, but it's not yet tenable. So, I would disagree that it gives us a power to hold up the, you know, that we could stay in this lease. We can stay in this lease by virtue of the possessory interests that are granted to us by the terms of the lease. So at this point, you're staying in the lease because of the investment your client has made in it? Yes, that's fair. Isn't the, isn't it possible that the remedy that the statute puts in place for someone whose landlord doesn't make repairs is to just get to break the lease? Yes, that is one remedy, right. Yes, that is absolutely one remedy that is there, that if they don't make the repairs, and you know, and there's, it doesn't contemplate a situation like this, right. It contemplates a situation where a tenant needs to have, needs to have use of the premises in order to make income, and you know, they're running their business, and so they decide, I can't do this anymore, I need to leave, I need to find a new place, and so this does give them that remedy. It doesn't contemplate a situation like this where the parties are in a position where they seem to be waiting each other out, admittedly. So yes, it absolutely does provide that as a remedy, but it also provides, it also specifically says that it's cumulative and that it's not to the exclusion of other remedies, and what Howard Avenue Station and Mr. Ortiz have done is chosen to pursue other remedies, specifically with respect to Howard Avenue Station, has chosen to seek an abatement of the adequate protection payments until, unless and until the repairs are made, and then that we shouldn't make any back rent because under the adequate protection statute, we have not actually been given, the estate has not been given any benefit of the use for the last four years, So let's say that, let's say that the statute really did, I'm not asking you to concede that it does, but let's say that the statute really did have two options. One, the landlord makes the repairs and you pay the back rent, or two, you just leave. Does the bankruptcy court have equitable authority to go beyond that, to make a different move, or is the bankruptcy court constrained by the terms of the statute? I think the bankruptcy court has the authority to go beyond that. Under the bankruptcy code and federal preemption, that in this case, because we're dealing with a bankrupt party and we're dealing with benefits to the estate and the inequity of demanding a payment of now, like I said, $1,048,000 after not giving us any benefit to the estate for the last four years, I think the court can look beyond that and look at the equities of the case. So unless your honors have any further questions, I would ask that the court dismiss the appeal or in the alternative, affirm the order of the district court. Thank you. I'm going to try to hit on all these points as quickly as possible. First, Florida Statute 83.201 does not contemplate that it's going to be short term. In fact, it specifically states that they can withhold rent for the quote next rental period and thereafter until the repairs. There's no requirement in this statute that it be short term in any nature. Appellant slash Kane is not trying to take advantage of the statute. The appellant Kane in this case is trying to state that debtors are refusing to make the choice that the statute provides them. What's important here and I think what the district court order doesn't state is what relief, what statute, what case law, what is anybody relying on to provide that a debtor can abate rent payments or any tenant can abate rent payments during the terms of the lease if a property has been determined wholly unattainable. There's no other statutes, there's nothing in the bankruptcy code and there's no case law that permits the abatement of rent under these scenarios. Opposing counsel stated that they were paying administrative rent. That's not accurate. Administrative would be under 503 of a request for an administrative claim and that requires a specific motion, notice, and a hearing and an argument of benefit to the estate. None of which has been argued, none of which was ever before the bankruptcy court. The factual issues that were discussed regarding whether or not this is a final order are completely irrelevant to whether or not this is a final order. The factual issue that led us to 83.201 was that the property is untenable. There's no question as we stand here today that the property is untenable. The factual issue that has never been raised and never been determined but on which the district court relied was that the untenable nature of the property was due to the fault of my client. And that is something we vehemently dispute. It was never relied on by the bankruptcy court. If you review the bankruptcy court's actual rulings, bankruptcy court, this is a docket number 25, the hearing transcript on this motion 387-411 states I don't need any more details, I just want to know what controls because all she was asking us, everybody's agreeing it's untenable, so what do we do with this now? The district court relied on numerous transcripts that were non-evidentiary in nature that were mere statements by the opposing party that the landlord was at fault. That determination has never been made. And so if somehow the statute relies on equity, which we disagree that it does, but if it does, then there needs to be a factual record to make that work. The district court did not have a factual record. The district court was to review the factual findings of the bankruptcy courts for an abuse of discretion. However, there's no analysis of that in the district court opinion. The district court made its own finding of facts based on transcript experts in the bankruptcy court case in unrelated connested matters and unrelated adversary proceedings to determine that in his belief my client was at fault for the condemnation. But there is actual record of evidence even before your honors that show that is possibly in our view completely not the case. Docket entry 48, this is the Appellee Supplemental Appendix, pages 166 to 167. It's a declaration made by Mr. Ortiz. He admits in that declaration that the roof was constantly being repatched and repaired during this entire time frame. He was complaining of water leaks. And that wasn't until March of 2019 when the roof was being completely replaced. And the roof was replaced. The condemnation happened after the new roof was on. And so there is a huge question about whether or not the condemnation has anything to do with the four exterior walls and the roof, which is my client's only responsibilities under the lease. So the equities of the situation and the district court's ruling on that point are just incorrect. He was not sitting, he was sitting as an appellate court, but he made findings as a trial judge ruling on rulings. And I would also like to point out that the briefs to the district court never made this equities argument. It never claimed that the equity of what happened should somehow overrule the statute. The district judge came to that conclusion on his own. My last 10 seconds. Abatement of AP payments, 364D covers the payments, not adequate protection payments. The lease is required to be paid. Thank you, judges. Thank you. We appreciate your arguments and we'll move to our next case.